OPINION
The following appeal emanates from the decision of the Mahoning County Court of Common Pleas, Juvenile Division, wherein the Mahoning County Children Services Board was granted permanent custody with power of adoption over Sabrina and Christina Ellis. For the reasons set forth below, the decision of the trial court is affirmed.
 I. FACTS
On September 28, 1995, the Mahoning County Children Services Board, (hereinafter referred to as "CSB"), filed a complaint in the Juvenile Division of the Mahoning County Court of Common Pleas in regards to Sabrina Ellis (D.O.B. 8/8/95). At the time, Sabrina was seven weeks old and had been born addicted to cocaine. As such, CSB alleged that Sabrina should be adjudicated a dependent child. The complaint reflected that Sabrina's parents, Evania Ellis ("appellant" herein) and Rupert Jones, voluntarily relinquished temporary care of their daughter until October 8, 1995. During this period of time a case plan was drafted outlining various objectives which a caseworker requested that the parents complete in order to facilitate the return of their child. The complaint additionally sought a grant of temporary custody to CSB.
The matter first came for hearing before a magistrate of the Juvenile Division on October 12, 1995. In the magistrate's October 18, 1995 decision, CSB's motion for pre-dispositional interim custody was granted. The magistrate's decision was approved by the trial court on November 1, 1995. The trial court additionally appointed a guardian ad litem for Sabrina Ellis on October 17, 1995. A second hearing was held before the magistrate on November 2, 1995. In his decision rendered on November 8, 1995, the magistrate granted legal custody of Sabrina to CSB. This decision was adopted by the trial court on November 29, 1995. On May 16, 1996, a motion requesting modification of temporary commitment to permanent commitment was filed in the Juvenile Court. Despite attempts by CSB to assist appellant and Jones in remedying the conditions which resulted in the removal of their child from their home, it was determined that the child should not be returned to the home environment.
Prior to the scheduling of a hearing on this motion, appellant and Jones gave birth to another child, Christina Ellis (D.O.B. 6/28/96). In that the parents had failed to remedy the conditions which resulted in the removal of Sabrina from the home, CSB filed a complaint on July 25, 1996 alleging that Christina should also be adjudicated a dependent child. Appellant and Jones again chose to voluntarily relinquish temporary care of their child. A new case plan was drafted by CSB to reflect the objectives to be achieved as related to Christina and a guardian ad litem was appointed. On September 3, 1996, the magistrate granted CSB pre-dispositional interim custody over Christina. This decision was adopted by the trial court on September 17, 1996. Christina was subsequently adjudicated a dependent child by the magistrate of the Juvenile Division on October 11, 1996. As a result, CSB was granted legal custody. The trial court adopted the magistrate's decision as to these matters on October 29, 1996.
A motion requesting modification of temporary commitment to permanent commitment was filed by CSB as related to Christina on December 19, 1996. In that the hearing for permanent custody on Sabrina had not yet been held, both matters were set for hearing before a magistrate on March 4, 1997. When the cases were called for hearing on March 4, all parties with the exception of appellant were present. Counsel for appellant advised the court on record that he had been in continuous contact with his client and had expected her to be present at the hearing. Mr. Jones provided additional insight as to appellant's whereabouts when he indicated to the court that she was "out of town briefly". It would later be determined that in fact appellant was incarcerated on the date of the hearing. In light of her absence, counsel for appellant moved for a continuance of the hearing until his client could be located. However, this motion was denied by the magistrate and the hearing proceeded as scheduled.
On March 28, 1997, the magistrate entered her decision recommending that CSB be granted permanent custody of both Sabrina and Christina. Although the record reflects that counsel for appellant was sent notice of the magistrate's decision, no written objections to the decision were ever filed. As a result, the trial court adopted the magistrate's decision on April 11, 1997. Appellant filed a notice of appeal on June 5, 1997. While the notice of appeal was clearly filed beyond the time allotted pursuant to App. R. 4 (A), appellant stated that her delay in filing was due to the fact that she had not received notice of the court's decision until after the time for appeal had expired.
In addition to filing a notice of appeal, on October 21, 1997 appellant filed a motion to vacate the trial court's judgment entry dated April 11, 1997 on the grounds she had not been provided notice of the hearing on March 4, 1997. This motion was overruled by the trial court on December 3, 1997 on the basis that appellant waived her appearance by failing to properly cooperate and communicate with counsel. A second notice of appeal was filed by appellant on December 12, 1997. On January 28, 1998, this court ordered that appellant's second appeal be dismissed and that all pleadings filed therein be merged into the first appeal. Additionally, on June 23, 1998 this court overruled CSB's motion to dismiss the remaining appeal.
Appellant raises three assignments of error on appeal.
 II. ASSIGNMENT OF ERROR NUMBER ONE
Appellant's first assignment of error reads:
 "THE COURT BELOW ERRED IN NOT PROVIDING APPELLANT WITH ADEQUATE NOTICE OF ITS DECISION."
Appellant first argues that she was denied the ability to timely object to the magistrate's decision granting permanent custody to CSB as she never received a copy of such. Despite the fact that the decision indicates service was to be made upon appellant's counsel at his business address, appellant asserts that the record is devoid of any evidence that the contents of this decision were actually communicated to her by counsel. Similarly, appellant argues that she was never served a copy of the trial court's entry which adopted the decision of the magistrate. Finally, appellant contends she was never notified CSB was seeking permanent custody of both of her children. This failure to give reasonable notice is alleged to result in a denial of the right to legal redress of injuries in violation of Section 16, Article I of the Ohio Constitution.
 A. APPLICABLE LAW
Under Juv.R. 20, general guidelines are provided as to the requirements of service subsequent to the filing of a complaint. The rule provides in pertinent part:
 "(B) Service: how made. Whenever under these rules or by an order of the court service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service is ordered by the court upon the party. Service upon the attorney or the party shall be made in the manner provided in Civ.R. 5 (B)."
Juv.R. 40 (E) provides further instruction as related to service of a magistrate's decision. The rule states:
 "(1) Magistrate's decision. The magistrate promptly shall conduct all proceedings necessary for decision of referred matters. The magistrate shall then prepare, sign, and file a magistrate's decision of the referred matter with the clerk, who shell serve copies on all parties or their attorneys."
The substance of these rules was expounded upon by the Ohio Supreme Court in its decision in Swander Ditch Landowners' Assn.v. Joint Bd. of Huron Seneca Cty. Cmmrs. (1990), 51 Ohio St.3d 131. The court specified that in the event a party to be served is represented by counsel, service should be made upon the attorney rather than the party in the absence of a court order to the contrary. Id. at 134. The reasoning behind this decision was that an attorney is in a better position to understand the legal import of any documents required to be served to a client and the nature of any action which needs to be taken. Id. Furthermore, there is a presumption of proper service when there is compliance with the Civil Rules as to service. MBA Realty v. Little G, Inc.
(1996), 116 Ohio App.3d 334, 339 citing Grant v. Ivy (1980),69 Ohio App.2d 40, 42. This presumption may be rebutted by sufficient evidence to the contrary. Id.
 B. ANALYSIS
In first addressing appellant's contention that she was denied the ability to object to the magistrate's decision as she never received a copy of such, the magistrate's decision clearly contains a certification of service verifying that a copy of the decision was mailed to-appellant's counsel on March 28, 1997. Since appellant was represented by counsel, it was more appropriate for the court to deliver the magistrate's decision to counsel rather than to appellant personally. Swander DitchLandowners' Assn., supra. Counsel for appellant would clearly be in a better position to understand the nature of the decision and whether any objection to such would be advantageous. Id. Moreover, as Civ.R. 5 (B) indicates, mailing a copy of the papers at issue to an individual's last known address is considered appropriate service. Accordingly, the Civil Rules as to service have been complied with and it will be presumed that service was complete and proper. MBA Realty, supra.
While appellant asserts that as a matter of fundamental fairness the Juvenile Court should mail a copy of the decision to the parties as well as their counsel, they are unable to cite a single authority in support of their proposition. Moreover, our search of the court cases and statutes of this state clearly indicate that the aforementioned lack of supporting authority is attributable to its non-existence, and not from any oversight of appellant's counsel. Therefore, appellant is in essence asking this court, without any compelling constitutional or other basis, to set forth a new standard. We respectfully decline to do so.
Appellant further proposes that there is an absence of evidence in the record to support a finding that the contents of the decision were ever communicated to her by counsel. However as discussed above, once it is determined that the rules as to service have been complied with, a presumption arises that service was proper. Id. There is no burden upon the courts to establish that once counsel received the decision, the contents of such were relayed to his or her client. Rather, the burden is upon appellant to establish that service upon counsel was never achieved. It is reasonable to assume that counsel received mail service addressed to him at his business address in the absence of evidence to the contrary. This is especially so in the case sub judice as appellant has failed to provide any evidence that her counsel failed to receive the magistrate's decision. Had this court been presented with an affidavit from appellant's trial counsel that he had never received notice of the magistrate's decision, the decision of this court may have been different. However absent such proof, this court is compelled to hold that service was proper as related to the magistrate's decision. Furthermore, as will be seen under appellant's third assignment of error, even if appellant had filed objections to the decision she could have done little to alter the facts and conclusions set forth in the trial court's judgment.
While appellant also asserts error in the failure to receive proper notification of the trial court's entry adopting the magistrate's decision, any error which may have occurred is harmless in nature. By overruling CSB's motion to dismiss the present appeal and agreeing to hear appellant's arguments, no prejudice can be demonstrated. Lastly, in addressing appellant's contention that she was never notified that CSB was seeking permanent custody of both of her children, a review of the record reveals that appellant was personally served notice of both proceedings. Appellant was personally served a copy of the motion seeking permanent custody of Sabrina Ellis on May 31, 1996. Similarly, she was personally served a copy of the motion relating to Christina on February 17, 1997.
Based upon the foregoing, appellant's arguments as set forth under assignment of error number one are without merit.
 III. ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error reads:
 "THE COURT BELOW ERRED IN NOT CONTINUING THE DISPOSITIONAL HEARING HELD ON MARCH 4, 1997."
Appellant next asserts that the trial court erred when it denied counsel's oral request for a continuance of the March 4, 1997 hearing on CSB's motion for permanent custody. It is appellant's position that had she been present, she could have provided valuable testimony regarding her attempts to improve her parenting skills as well as any obstacles which she had encountered in achieving this goal.
 A. APPLICABLE LAW
In determining whether to grant or deny a continuance, a trial court is afforded broad discretion. Hartt v. Munobe (1993),67 Ohio St.3d 3, 9. An appellate court will not reverse the denial of a continuance absent a showing of an abuse of the trial court's discretion. State v. Unger (1981), 67 Ohio St.2d 65, 67. Abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. In order for a reviewing court to determine that a trial court has abused its discretion, the decision must be "so palpably and grossly violative of fact and logic that it evidences * * * perversity of will." Huffman v. Hair Surgeon,Inc. (1985), 19 Ohio St.3d 83, 87.
When addressing whether an individual's parental rights are to be terminated, a trial court must keep in mind that a natural parent has a fundamental right to care for, have custody of and manage his or her child. Santosky v. Kramer (1982),455 U.S. 745, 753. As a result, a trial court must be certain that the procedures which are utilized in terminating an individual's parental rights satisfy due process requirements. Id. at 754. A determination of whether a parent was afforded his or her due process rights requires a balancing of the following factors: (1) the private interest which will be affected; (2) the risk of an erroneous deprivation of said interest through the procedures used and the probable value of additional procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional procedural safeguards would entail. Mathews v.Eldridge (1976), 424 U.S. 319, 334.
 B. ANALYSIS
Under the first factor in Mathews, it has already been noted that a parent's right to raise his or her child is fundamental in nature. Santosky, supra. While this interest is paramount to most others, it must be remembered that it is nonetheless subservient to the child's interest. In re Perales (1977),52 Ohio St.2d 89, 98.
As to the second factor to be considered, this court holds that the risk of erroneous deprivation was low. Appellant's counsel was present at the hearing to represent her interests. During the course of the hearing, counsel for appellant extensively cross-examined witnesses in an attempt to safeguard appellant's parental rights. A full record of the proceedings was made in order to preserve the testimony for appellate review. Had appellant been present at the hearing, she alleges that she would have been better suited than counsel to present testimony which would refute CSB's claims that she had failed to significantly improve her parenting skills. However, counsel's cross-examination of appellant's case worker served the same purpose. Furthermore, any testimony on this issue which may have been provided by appellant would have been significantly undermined by testimony as to her long term drug and alcohol abuse and failure to remedy such.
Any proposed benefit of having appellant present at the hearing is eroded further when the third factor under Mathews is analyzed. The primary interest in a permanent custody proceeding is ensuring the interest of the child is protected in an expedited manner. Additionally, there is an interest in minimizing the risk and expense involved in conducting proceedings. These interests outweigh any interest appellant had in attending the hearing to ensure that a deprivation of her rights did not occur. At the time the hearing was conducted, the trial court had no information as to appellant's whereabouts. The record reflects that appellant was at the November 19, 1996 hearing in which this matter was set for the March 4, 1997 dispositional hearing. Counsel for appellant verifies that appellant was aware of the hearing date as he had been "in continuous contact with her [appellant] concerning what she was doing to help her case in this trial." (Tr. at 4). Counsel also indicated that it was his understanding that appellant would be at the hearing. Mr. Jones added that while appellant went "out of town briefly," she was aware of the permanent custody hearing.
Although appellant suggests that "a simple call to the jail would have done the job", there is no indication in the record that the trial court was made aware of the fact that appellant was incarcerated on the date of the hearing. The trial court only knew that appellant had knowledge of the hearing but failed to appear as she was out of town. Having failed to establish that the absence or unavailability was involuntary and that she would be available for hearing at some reasonable time in the future, the trial court cannot be viewed as having been required to grant the oral motion for continuance. Hartt, supra. Presented with the evidence described above, the magistrate had no reason to believe that appellant was incarcerated. As such, the trial court's interest in expediting the adjudication of the child's interest as well as preserving finite judicial resources was best served by denying the continuance.
It should also be noted that had appellant truly been concerned about her presence at the hearing, she should have notified counsel of her incarceration in a timely manner. Had such been done, counsel would not have been forced to make a last-minute, oral motion for continuance on the day of the hearing. Additionally, counsel would have been given the opportunity to request that his client be deposed in jail or in the alternative transported to the Juvenile Court for the hearing. Appellant's failure to take this type of reasonable measure left the court with no option but to deny the continuance and proceed with the hearing.
Having found no abuse of discretion on behalf of the trial court, appellant's second assignment of error must be held to lack merit.
 IV. ASSIGNMENT OF ERROR NUMBER THREE
Appellant's final assignment of error reads:
 "THE DECISION OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
In appellant's final assignment, it is argued that clear and convincing evidence was not produced at the hearing to establish that it was in the child's best interest to have custody awarded to CSB. Appellant points to various portions of her caseworker's testimony in support of this contention. For instance, appellant indicates that she completed a six week "inpatient" drug and alcohol treatment program. Additionally, she underwent psychological testing and attended "53 out of 70 required parenting classes". Appellant also feels it is laudable that she never harmed her children in any way during any of the visitation sessions. Based upon these factors, appellant argues that the trial court's decision granting permanent custody to CSB was against the manifest weight of the evidence.
 A. APPLICABLE LAW
In addressing the permanent termination of parental rights and the grant of permanent custody to a public children services agency, courts are guided by the dictates of R.C. 2151.414. Section (B) of the statute declares under what circumstances permanent custody may be granted:
 "The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents * * *
In determining the best interest of the child, the court must examine the factors enumerated in R.C. 2151.414 (D) as well as all other factors the court determines to be relevant. As to the issue of whether the child cannot or should not be placed with either parent, the trial court must find by clear and convincing evidence that one of the factors enumerated in R.C. 2151.414 (E) exists. Matter of Tirado (Jan. 22, 1998), Mahoning App. No. 97 CA 26, unreported, citing In Re William S. (1996),75 Ohio St.3d 95, 99.
Clear and convincing evidence has been defined as the measure of proof which is more than a mere preponderance of the evidence but less than the extent of such certainty as is required beyond a reasonable doubt in criminal cases and which would provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cincinnati Bar Assn. v.Massengale (1991), 58 Ohio St.3d 121, 122. An appellate court shall not reverse a trial court's determination concerning parental rights unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368.
 B. ANALYSIS
Despite appellant's contention that the trial court relied upon insufficient evidence as the basis for its decision, a review of the trial court's entry in conjunction with the record reveals extensive testimony and evidence offered in this case which was relied upon in arriving at the final determination. Said evidence complies with the statutory requirements which must be met prior to permanently terminating parental rights.
In support of its motion for permanent custody, CSB provided testimony from appellant's case worker, Valerie McGuire. Ms. McGuire testified that she had been involved with appellant from August 1995 until the March 1997 hearing with the exception of approximately three months. Based upon her interaction with appellant during this period of time, Ms. McGuire opined that there was no possibility of placing Sabrina and Christina with appellant in a reasonable period of time as appellant had failed to resolve the problems which had initially resulted in CSB requesting temporary custody of the children.
While Ms. McGuire did agree that appellant succeeded in maintaining stable housing, none of the remaining provisions of the case plan had been achieved. As to appellant's contention that she completed a six week inpatient alcohol and drug treatment program, it was established by Ms. McGuire that said program was in actuality outpatient in nature. Although the completion of this program illustrated initial compliance with one objective of the case plan, Ms. McGuire testified that appellant subsequently I failed to follow through with any after care recommendations. Additionally, while appellant was to comply with requests for random urinalysis testing for drugs, she often refused to do so. Furthermore, appellant's last test prior to hearing produced a positive result for cocaine usage.
As to appellant's reliance upon the fact that she attended "53 of 70 required parenting classes", Ms. McGuire's testimony reveals that these numbers actually relate to attendance at visitation sessions. Although appellant feels her attendance reflects positively on her ability to retain custody of her children, such is not the case. These numbers establish that appellant failed to attend approximately one fourth of the scheduled visitation sessions at a time in which she should have been attempting to take all reasonable measures to establish that she was a fit parent. Ms. McGuire testified that appellant's absences from visitation sessions consistently occurred predominantly during the first and last weeks of the month.
Although Ms. McGuire suspected these absences were do to appellant's drug abuse, appellant insisted that she was ill and could not attend. Ms. McGuire's attempts to obtain drug testing during these periods of time were met with refusals by appellant. These circumstances serve only to further weaken appellant's position.
As to the issue of parenting classes, while appellant may have attended these classes, the guardian ad litem appointed to the case stated in the October 1, 1996 report that appellant "repeatedly" slept through the classes. This statement in conjunction with Ms. McGuire's opinion that appellant had ongoing problems with parenting skills serves as yet another instance of appellant's failure to substantially improve her position. While appellant may be correct in her statement that she never abused the children during visitation sessions, such a fact in and of itself is hardly adequate to overcome the overwhelming difficulties described above.
Appellant's failure to substantially comply with the provisions of the case plan as set forth in the record in the case at bar establishes by clear and convincing evidence that the statutory requirements set forth in R.C. 2151.414 were met. Pursuant to the factors set forth in R.C. 2151.414 (D), the record establishes that it would be in the children's best interest to be placed with CSB rather than return home. The children's interaction with appellant has been minimal due to the fact that both children were removed from the home environment at or near the time of birth. Additionally, appellant failed to attend nearly 25% of the scheduled visitation sessions. The guardian ad litem in this case opined that appellant had limited contact with Sabrina and Christina. Similarly, based upon the evidence presented to it the trial court found that appellant has shown little interest in unification with her children.
The trial court further found that the children could not and should not be placed with appellant or Mr. Jones in light of the testimony and evidence of record. The trial court went so far as to find that based upon the failure to meet the objectives of the case plan, "it would be dangerous to return the children home." This failure to remedy the conditions which resulted in both children initially being placed with CSB further justifies the termination of parental rights.
Based upon the foregoing discussion, it cannot be held that the decision of the trial court was against the manifest weight of the evidence. Clear and convincing evidence was contained in the record to establish that the children could not be placed with either parent and that it was therefore in their best interest to be permanently placed with CSB. Hence, appellant's third assignment of error is without merit.
For the foregoing reasons, the decision of the trial court is affirmed.
Cox, P.J., concurs.
Donofrio, J., concurs.
APPROVED:
 ______________________________ JOSEPH J. VUKOVICH, JUDGE